UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:06CV-596R

SECURA INSURANCE COMPANY                                                                      PLAINTIFF

v.

CHERIE GORSICK, et al.                                                                              DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant Cherie Gorsick's Motion to Dismiss, or in the alternative, her Motion to Realign the Parties (Docket #22). Plaintiff Secura Insurance Company filed a response (Docket #23) to which Gorsick replied (Docket #26). This matter is now ripe for adjudication. For the reasons that follow, Gorsick's Motion to Dismiss is DENIED and Gorsick's Motion to Realign the Parties is DENIED.

**BACKGROUND**

On June 11, 2003, Gorsick filed a lawsuit against Enormous Art and Stuart Williams in Division Three of Jefferson Circuit Court in Kentucky. An Amended Complaint was subsequently filed by Gorsick on September 22, 2003. According to the Amended Complaint, on May 15, 2001, Gorsick filed a report with the Department of Immigration and Naturalization Service against Stuart Williams, an officer of Enormous Art, alleging that he was in the country without a proper VISA. Gorsick alleged that as a result of filing this report, she was fired from her position at Enormous Art and was denied back vacation pay. Gorsick then filed a complaint with the Wage and Hour Division of the United States Department of Labor seeking the additional vacation pay. Both times after a Wage and Hour case worker interviewed Williams with respect to the vacation pay issue, Williams filed police reports against Gorsick. Gorsick was subsequently arrested and indicted for theft by

unlawful taking over $300 and for fraudulent use of a credit card. Gorsick's case was tried in front of a Jefferson County jury where the Court directed a verdict in her favor for all of the theft by unlawful taking over $300 counts and the jury acquitted her of the fraudulent use of a credit card count.

The Amended Complaint brought four counts against Enormous Art and Williams. The first count alleged that due to the malicious conduct of the defendants, Gorsick suffered irreparable harm to her reputation and physical and emotional distress from being imprisoned and defending the criminal accusations brought against her. The second count alleged that the defendants wrongfully abused the legal process by having a criminal action instituted against Gorsick to coerce her into abandoning her Wage and Hour Division claim. The third count alleged that on June 21, 2001, after Gorsick was terminated from Enormous Art, she filed a complaint with the Human Relations Commission alleging employment discrimination based on her national origin, retaliation, and sex discrimination and in retaliation for this action, the defendants responded by initiating criminal charges which caused Gorsick to suffer psychological distress, humiliation, embarrassment, and lost wages. Count four sought redress for alleged violations of KRS 344.280(1), unlawful retaliation for filing a complaint based on Enormous Art's answer to the original complaint and counterclaim against Gorsick filed on July 3, 2003, which alleged that Gorsick improperly and without authorization misappropriated funds for her own personal use and fraudulently and intentionally removed without authorization Enormous Art merchandise.

After Gorsick filed the initial complaint, both Enormous Art and Williams retained the law firm of Woodward, Hobson & Fulton as defense counsel. On January 13, 2004, Gorsick propounded Requests for Admissions, Interrogatories, and Requests for Production of Documents to Enormous

Art, which were never answered. On February 2, 2004, defense counsel for Enormous Art and Williams filed a Motion to Withdraw as Counsel, which was granted by the court. On February 3, 2005, Gorsick filed a Motion to Dismiss Enormous Art's Counterclaim based on Enormous Art's lack of prosecution. This motion was granted by the court. On April 12, 2004, pursuant to a motion by Gorsick, the court deemed Gorsick's Requests to Admissions admitted based upon the defendants' failure to respond. Gorsick filed a Motion for Summary Judgment as to liability only, which was granted by the court on May 16, 2006.

Secura issued an insurance policy to Enormous Art effective May 31, 2001 to May 31, 2002 and subsequently renewed from May 31, 2002 to May 31, 2003. The insurance policy included coverage for "Personal and Advertising Injury." This term is defined in the insurance contract as meaning an injury, including consequential "bodily injury," arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's good, products or services;

    e. Oral or written publication of material that violates a person's right of privacy;

    f. The use of another's advertising idea in your "advertisement"; or

    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

On August 17, 2006, prior to the damages hearing, Gorsick sent a letter to Tony Brecunier,

Claims Director at Secura, detailing the litigation history and claiming that Secura had a duty to indemnify Enormous Art under its insurance policy. In a separate letter dated August 30, 2006, Gorsick made a demand upon Secura for $400,000.

On November 22, 2006, Secura filed a declaratory judgment action in this Court seeking a declaration that there is no coverage due to Gorsick. On January 15, 2007, Gorsick filed her Answer and Counterclaim to Secura's Complaint. The Counterclaim sought relief against Secura for alleged violations of section 304.12-230 of the Kentucky Unfair Claims Settlement Practices Act ("UCSPA"). Secura filed a Motion to Dismiss Gorsick's Counterclaim on February 8, 2007. On April 27, 2007, this Court entered an order denying Secura's Motion to Dismiss Gorsick's Counterclaim at that time. The order stated that a bifurcated procedure was the proper way to try the case and stayed discovery on the bad faith claims pending resolution of the underlying claim.

## DISCUSSION

### I. MOTION FOR DISMISSAL

Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, a court of the United States "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515, U.S. 277, 282 (1995).

The Sixth Circuit considers five factors in assessing the propriety of the federal court's exercise of discretion in a case where an insurance carrier seeks a declaratory judgment in federal court about defense and coverage when their insured has been sued for alleged tort liability in state

4

court:

> (1) whether the judgment would settle the controversy;
>
> (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata;
>
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and
>
> (5) whether there is an alternative remedy that is better or more effective.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000) (quotations and citations omitted).

Plaintiff cites to factors 1, 4, and 5 as weighing in favor of dismissal.

**A.      Settling the Controversy**

Gorsick, citing *Allstate v. Mercier*, 913 F.2d 273 (6th Cir. 1990) in support, argues that rendering a verdict in Secura's declaratory judgment action would not settle the controversy. Gorsick argues that only with the development of the factual record can it be ascertained whether Secura's argument regarding its exclusions is valid and that, even with the rendering of a declaratory judgment, the underlying litigation would continue in the case as no decision has been issued concerning damages. Secura asserts that Gorsick has failed to show that the state court's ultimate finding on damages will in any way involve issues that are the same as the issues to be decided in this declaratory action.

In *Allstate*, Allstate sought a declaratory judgment that it had no duty to defend or indemnify its insured because of the exclusions listed in the policy. *Id.* at 275. The insureds were sued by a plaintiff in a state court for wrongful death, allegedly because the insureds provided alcohol to a minor who killed the decedent while driving intoxicated. *Id.* Allstate was implicated as it provided

5

the homeowner's coverage for the insureds' parents. *Id.* Allstate filed the federal action for declaratory relief while the state action was pending. *Id.* The federal district court entered summary judgment in favor of Allstate. *Id.* at 276.

The Court of Appeals reversed the District Court's declaratory judgment. *Id.* at 279. Examining the first factor of the five factor test, the Court found that there were still factual determinations at issue that would necessarily be developed at a trial of the tort action and may have direct bearing on the declaratory judgment action. *Id.* at 278. In light of the paucity of the record, the Court found that the declaratory judgment could not properly terminate the controversy. *Id.* at 279.

In the instant case, Gorsick has already obtained a default judgment against the insureds on the issue of liability, leaving only damages to be determined. Gorsick has failed to demonstrate that the state court's finding on damages will involve the issues that this Court would decide if it entertains the declaratory judgment action. In deciding the measure of damages in the underlying tort action, the state court will not be required to examine the coverage issues involved here. This Court finds that a judgement in the case before it would settle the controversy as to coverage issues although the amount of damages Gorsick is entitled to will ultimately be determined by the state court.

**B.     Friction**

Gorsick argues that rendering a verdict in this action would increase friction between the state and federal courts as state courts are more familiar with the interpretation of insurance contracts and in a better position to resolve such issues.

In determining whether the exercise of jurisdiction would increase friction between federal

6

and sate courts, the Sixth Circuit has considered three additional factors:

    (1)    whether the underlying factual issues are important to an informed resolution of the case;

    (2)    whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

    (3)    whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Roumph*, 211 F.3d at 968.

In support of her position, Gorsick cites to *Bituminous Casualty Corp. v. J & L Lumber Co., Inc.* In *J & L Lumber*, the Sixth Circuit vacated a district court's decision issuing a declaratory judgment that an insurance company had no duty to defend or indemnify an insured against injury claims made by a person who was hauling logs for the insured. *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 809 (6th Cir. 2004). In the underlying state court actions, the logger had a personal injury claim against the company and a workers' compensation claim. *Id.* at 810-11.

In examining the friction factor, the Court noted that the case was brought pursuant to the federal courts' diversity jurisdiction and that neither federal common law nor federal statutory law applied to the substantive issues of the case. *Id.* at 816. The Court next observed that the declaratory judgment action involved the same underlying factual issues that were pending in two state court actions. *Id.* The Court found that the state courts were in a better position to evaluate these factual issues because they rested solely on state law with which the state courts were better acquainted. *Id.* The Court emphasized that the resolution of the declaratory judgment action would require consideration of two undetermined questions of state law and did not involve the application of any federal law. *Id.* The Court concluded that a friction between the courts was an actuality, not

7

a mere possibility. *Id.*

In the instant case, there are no underlying factual issues left to be resolved by the state court with regard to liability. As stated above, Gorsick has failed to demonstrate that the state court's finding on damages will involve the issues that this Court would decide if it entertains the declaratory judgment action. Nor has Gorsick pointed to any undetermined questions of state law that this Court would be required to consider if it entertained the declaratory judgment action. This Court finds that finds that a judgment in the case before it would not create friction with the state court.

**C.    Alternative Remedy**

Gorsick argues that because Kentucky allows the filing of declaratory judgment actions in state court pursuant to KRS 418.040 which allows a party to "ask for a declaration of rights, either alone or with other relief," a better forum for this case is in the state courts of Kentucky.

In *J & L Lumber*, the Court stated, "We have repeatedly held in insurance coverage diversity cases that 'declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court.'" *J & L Lumber*, 373 F.3d at 812 (quoting *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 463 (6th Cir. 1986)). The Court emphasized that "such actions should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem. Otherwise confusing problems of scheduling, orderly presentation of fact issues and *res judicata* are created." *Id.* (quoting *Manley*, 791 F.2d at 463).

Here, the Court does not face the problems outlined in *J & L Lumber*; all factual issues concerning liability have been resolved in the state court. Additionally, there has been no evidence

that the state court's finding on damages will involve the issues that this Court would decide if it entertains the declaratory judgment action. Although Kentucky allows the filing of declaratory judgment actions in state court, this Court does not find that this factor compels dismissal due to the resolved factual record before it.

Gorsick has not indicated, nor has this Court found, that any of the other factors weigh in the favor of dismissal. Examining these five factors, this Court finds that it may entertain jurisdiction of the declaratory action.

## II.     MOTION FOR REALIGNMENT

Federal district courts may exercise diversity jurisdiction where the parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). In addition, an 'actual and substantial' controversy must exist between the parties. *United States Fid. & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992).

With the current alignment of the parties diversity is achieved as Plaintiff Secura is a citizen of Wisconsin, Defendants Gorsick and Enormous Art are Kentucky citizens, and Defendant Williams is a citizen of the United Kingdom. However, Gorsick argues that the parties should be realigned so that Enormous Art and Williams are plaintiffs in this declaratory judgment action. Gorsick asserts that the parties should be so aligned because the primary issue in the suit at state court is whether Enormous Art, Williams, and Secura are liable for damages to Gorsick. Such an alignment would deprive this Court of jurisdiction.

Although the parties may be aligned in a certain way by the plaintiff, it is the responsibility of the Court to properly align the parties with regard to their interests. *Id.* "If the interests of a party named as a defendant coincide with those of the plaintiff in relation to the purpose of the lawsuit,

9

the named defendant must be realigned as a plaintiff for jurisdictional purposes." *Id.* (quoting *Cont'l Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 (9th Cir. 1987)).

In determining whether the parties to an action are properly aligned, the Court must look to the "principal purpose of the suit" and the "primary and controlling mater in dispute." *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941). The Sixth Circuit requires that "parties be aligned in accordance with the primary dispute in the controversy, even where a different, legitimate dispute between the parties supports the original alignment." *Thomas Solvent*, 955 F.2d at 1089. "Thus, despite the fact that there may be actual and substantial ancillary or secondary issues to the primary issue, the parties should be aligned in accordance with the primary issue in an action." *Id.*

Gorsick cites to *United States Fidelity & Guaranty Co. v. Thomas Solvent Co.* in support of her position. In *Thomas Solvent*, the United States Environmental Protection Agency and the State of Michigan commenced actions against Thomas Solvent, a company operating chemical distribution facilities, seeking injunctive relief and penalties on allegations that the company was polluting water sources. *Id.* at 1086. Thomas Solvent sought coverage from its insurers for expenses arising out of these actions. *Id.* All of the insurers, except United States Fidelity & Guaranty ("USF&G"), denied coverage. *Id.*

USF&G then instituted the declaratory judgment action against Thomas Solvent, insurers of Thomas Solvent, and related corporate entities in federal district court on the basis of diversity jurisdiction. *Id.* at 1087. USF&G sought a declaration that it did not have a duty to defend or indemnify any of the Thomas parties, and if the district court found that it did, then the duty was shared by the defendant insurance companies. *Id.* USF&G subsequently filed a motion for realignment of the parties on the basis that because all of the insurance companies sought a

declaration that they had no duty to indemnify the Thomas parties, the insurance companies should be aligned together against the Thomas parties. *Id.* The Sixth Circuit recognized that there was an actual conflict between the parties as originally aligned; USF&G had brought the action seeking a declaratory judgment of the obligations of the various insurers in order to receive contribution from the insures who shared an obligation with USF&G to the insured parties. *Id.* at 1089. However, the Court stated that the primary dispute in the case was whether the insurers had a duty to indemnify any of the Thomas parties, finding that a determination of this issue may make the contribution issue moot. *Id.* at 1090-91. As all of the insurance companies opposed the Thomas parties on this issue the Court affirmed the district court's order granting the motion for realignment. *Id.* at 1091.

In *Thomas Solvent* the Court looked at the primary dispute of the declaratory judgment action, not that of the underlying state court action. *Id.* at 1090-91. In the instant case this Court finds that the primary dispute is whether Secura owes any coverage to the insureds. The current alignment of the parties is in accordance with the primary issue in this action.

## CONCLUSION

For the foregoing reasons, Gorsick's Motion to Dismiss is DENIED and Gorsick's Motion to Realign the Parties is DENIED.

An appropriate order shall issue.