UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:06CV-596R

SECURA INSURANCE COMPANY                                                    PLAINTIFF

v.

CHERIE GORSICK, et al.                                                      DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiff Secura Insurance Company's Motion for Summary Judgment (Docket #33). Defendant Cherie Gorsick has filed a response (Docket #35) to which Secura has replied (Docket #36). This matter is now ripe for adjudication. For the reasons that follow, Secura's Motion for Summary Judgment is GRANTED.

**BACKGROUND**

On June 11, 2003, Gorsick filed a lawsuit against Enormous Art and Stuart Williams in Division Three of Jefferson Circuit Court in Kentucky. An Amended Complaint was subsequently filed by Gorsick on September 22, 2003. According to the Amended Complaint, on May 15, 2001, Gorsick filed a report with the Department of Immigration and Naturalization Service ("INS") against Stuart Williams, an officer of Enormous Art, alleging that he was in the country without a proper VISA. Gorsick alleged that as a result of filing this report, she was fired from her position at Enormous Art and was denied back vacation pay. Gorsick then filed a complaint with the Wage and Hour Division of the United States Department of Labor seeking the additional vacation pay. Both times after a Wage and Hour case worker interviewed Williams with respect to the vacation pay issue, Williams filed police reports against Gorsick. Gorsick was subsequently arrested and indicted for theft by unlawful taking over $300 and for fraudulent use of a credit card while she was

in the employ of Enormous Art. Gorsick's case was tried in front of a Jefferson County jury where the Court directed a verdict in her favor for all of the theft by unlawful taking over $300 counts and the jury acquitted her of the fraudulent use of a credit card count.

The Amended Complaint brought four counts against Enormous Art and Williams. The first count alleged that due to the malicious conduct of the defendants, Gorsick suffered irreparable harm to her reputation and physical and emotional distress from being imprisoned and defending the criminal accusations brought against her. The second count alleged that the defendants wrongfully abused the legal process by having a criminal action instituted against Gorsick to coerce her into abandoning her Wage and Hour Division claim. The third count alleged that on June 21, 2001, after Gorsick was terminated from Enormous Art, she filed a complaint with the Human Relations Commission alleging employment discrimination based on her national origin, retaliation, and sex discrimination and in retaliation for this action, the defendants responded by initiating criminal charges which caused Gorsick to suffer psychological distress, humiliation, embarrassment, and lost wages. Count four sought redress for alleged violations of KRS 344.280(1), unlawful retaliation for filing a complaint based on Enormous Art's answer to the original complaint and counterclaim against Gorsick filed on July 3, 2003, which alleged that Gorsick improperly and without authorization misappropriated funds for her own personal use and fraudulently and intentionally removed without authorization Enormous Art merchandise.

After Gorsick filed the initial complaint, both Enormous Art and Williams retained the law firm of Woodward, Hobson & Fulton as defense counsel. On January 13, 2004, Gorsick propounded Requests for Admissions, Interrogatories, and Requests for Production of Documents to Enormous Art, which were never answered. On February 2, 2004, defense counsel for Enormous Art and

Williams filed a Motion to Withdraw as Counsel, which was granted by the court. On February 3, 2005, Gorsick filed a Motion to Dismiss Enormous Art's Counterclaim based on Enormous Art's lack of prosecution. This motion was granted by the court. On April 12, 2004, pursuant to a motion by Gorsick, the court deemed Gorsick's Requests to Admissions admitted based upon the defendants' failure to respond. Gorsick filed a Motion for Summary Judgment as to liability only, which was granted by the court on May 16, 2006.

Secura issued an insurance policy to Enormous Art effective May 31, 2001 to May 31, 2002, and subsequently renewed from May 31, 2002 to May 31, 2003. The policy's relevant provisions are as follows:

> **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**
>
> **1. Insuring Agreement**
>
>     **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. . .
>
> . . .
>
> **2. Exclusions**
>
>     This insurance does not apply to:
>
>     **a.** "Personal and advertising injury":
>
>         **(1)** Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury":

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**

. . .

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence or offense.

   b. If a claim is made or "suit is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

. . .

**SECTION V - DEFINITIONS**

. . .

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   **d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's good, products or services;

   **e.** Oral or written publication of material that violates a person's right of privacy;

   **f.** The use of another's advertising idea in your "advertisement"; or

   **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

. . .

**EMPLOYMENT-RELATED PRACTICES EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

. . .

**B.** The following exclusion is added to Paragraph 2., **Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:**

5

> This insurance does not apply to:
>
> "Personal and advertising injury" to:
>
> **(1)** A person arising out of any:
>
> **(a)** Refusal to employ that person;
>
> **(b)** Termination of that person's employment; or
>
> **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person
>
> . . .
>
> This exclusion applies:
>
> **(1)** Whether the insured may be liable as an employer or in any other capacity

On August 17, 2006, prior to the damages hearing, Gorsick sent a letter to Tony Brecunier, Claims Director at Secura, detailing the litigation history and claiming that Secura had a duty to indemnify Enormous Art under its insurance policy. In a separate letter dated August 30, 2006, Gorsick made a demand upon Secura for $400,000.

On November 22, 2006, Secura filed a declaratory judgment action in this Court seeking a declaration that there is no coverage due to Gorsick. On January 15, 2007, Gorsick filed her Answer and Counterclaim to Secura's Complaint. The Counterclaim sought relief against Secura for alleged violations of section 304.12-230 of the Kentucky Unfair Claims Settlement Practices Act ("UCSPA"). Secura filed a Motion to Dismiss Gorsick's Counterclaim on February 8, 2007.[1] On

---

[1] Gorsick conceded in her response to Secura's motion to dismiss her counterclaim that Counts III and IV of her underlying complaint are excluded from coverage under the Employment-Related Practices Exclusion Endorsement. The remaining counts I and II seek

6

April 27, 2007, this Court entered an order denying Secura's Motion to Dismiss Gorsick's Counterclaim at that time. The order stated that a bifurcated procedure was the proper way to try the case and stayed discovery on the bad faith claims pending resolution of the underlying claim.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177

---

damages for malicious prosecution and abuse of process. However, abuse of process is not included among the definitions of "personal and advertising injury" for which the policy provides coverage; therefore, the court will consider only the claims of malicious prosecution.

(6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

The Kentucky Supreme Court has summarized many of the canons to be used in the interpretation of insurance contracts within the commonwealth:

> [A]s to the manner of construction of insurance policies, Kentucky law is crystal clear that exclusions are to be narrowly interpreted and all questions resolved in favor of the insured. Exceptions and exclusions are to be strictly construed so as to render the insurance effective. Any doubt as to the coverage or terms of a policy should be resolved in favor of the insured. And since the policy is drafted in all details by the insurance company, it must be held strictly accountable for the language used.

*Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855, 859-60 (Ky. 1992) (citations omitted). However, these canons are only applicable "when the language of the insurance contract is ambiguous or self-contradictory. Otherwise, the contract is to be read according to its plain meaning, its true character and purpose, and the intent of the policies." *Peoples Bank & Trust Co. v. Aetna Cas. & Sur. Co.*, 113 F.3d 629, 636 (6th Cir. 1997).

**I.   EXCLUSION A**

Secura argues that the facts alleged by Gorsick in her pleadings at the state court level fall under the terms of the Exclusion A of the insurance contract which bars coverage for personal and advertising injury "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" Secura asserts that

Gorsick's own counterclaim demonstrates that the insureds knew their actions would violate Gorsick's rights.

> In Kentucky, the tort of malicious prosecution has six elements:
>
> (1) The institution or continuation of original judicial proceedings . . . 2) by, or at the instance, of the plaintiff, (3) the termination of such proceedings in defendant's favor, (4) malice in the institution of such proceedings, (5) want or lack of probable cause for the proceedings, and (6) the suffering of damage as a result of the proceeding.

*Broaddus v. Campbell*, 911 S.W.2d 281, 283 (Ky. Ct. App. 1995) (quoting *Raine v. Drasin*, 621 S.W.2d 895, 899 (1981)). Malice is the "intentional doing of a wrongful act to the injury of another, with an evil, or unlawful motive, or purpose." *Keiner v. Collins*, 171 S.W. 399, 402 (Ky. 1914) (quoting *Schwartz v. Boswell*, 160 S.W. 748, 750 (Ky. 1913)). Malice is a question of fact. *Sweeney v. Howard*, 447 S.W.2d 865, 866 (Ky. 1969).

The Court finds that the language of the insurance contract is self-contradictory. The policy states that the insurance carrier will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which the insurance applies. The policy specifically defines "personal and advertising injury" to include malicious prosecution. However, the policy specifically states that the insurance does not apply to "personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury. Included in the elements of malicious prosecution is the requirement that the party instituting judicial proceedings do so "with an evil, or unlawful motive, or purpose." *Keiner*, 171 S.W. at 402. Thus, in one provision the policy specifically provides coverage for malicious prosecution but in another provision excludes such coverage.

9

Having found the language of the policy self-contradictory, the Court must construe the exclusions narrowly so as to render the insurance effective, resolving any doubt as to the coverage or terms in favor of the insured. *Eyler*, 824 S.W.2d at 859-60. The Court finds that the exclusion prohibiting coverage for "personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury cannot apply to the "personal and advertising injury" of malicious prosecution. Any other reading of the policy would render the coverage for malicious prosecution illusory.

Therefore, this Court finds that Secura's claim is not barred by Exclusion A.

## II.     EMPLOYMENT-RELATED PRACTICES EXCLUSION ENDORSEMENT

The Employment-Related Practices Endorsement bars coverage for personal and advertising injury to a person "arising out of any . . . termination of that person's employment . . . or [e]mployment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person." Secura alleges that, because Gorsick's malicious prosecution claims involve, at the very least, her termination from Enormous Art and the insured's pursuit of criminal charges against her in order to discredit her, and because these charges involved the alleged theft of company funds while Gorsick was employed by Enormous Art, the claims are barred by the Endorsement. Gorsick argues that the Endorsement does not act to bar coverage as Secura has not demonstrate that the malicious prosecution by Secura's insured was a direct consequence or responsible condition related to Gorsick's employment or her termination so as to fall within the exclusion. Gorsick asserts that because Secura's insured did not begin its malicious prosecution of her until after she was fired, the

malicious prosecution did not arise out of her employment, since at the time of the malicious prosecution she was no longer employed. Gorsick also asserts that the malicious prosecution did not arise from her termination as the time lag between her firing and the filing of charges attenuated any connection.

In her Amended Complaint, Gorsick claimed that she was fired from her position at Enormous Art and denied back vacation pay after filing a report against Williams with the INS. Gorsick filed a complaint with the Wage and Hour Division of the United States Department of Labor seeking the additional vacation pay. Both times after a Wage and Hour case worker interviewed Williams with respect to the vacation pay issue, Williams filed police reports against Gorsick concerning conduct allegedly taking place during her employment with Enormous Art. These reports form the basis of Gorsick's claims of malicious prosecution.

In *Hugenberg v. West American Insurance Co.*, the Kentucky Court of Appeals examined the impact of a motor vehicle exclusion in a homeowner's insurance policy. No. 2004-CA-001472-MR, 2006 Ky. App. LEXIS 110 (Ky. Ct. App. Apr. 7, 2006). In that case, the policy at issue denied liability coverage for a bodily injury "arising out of" the use of a motor vehicle operated by an insured. *Id.* at *23. The court began with the premise that the phrase "arising out of" "has been construed expansively." *Id.* at *25. The court stated, "The words 'arising out of use' in an automobile liability insurance policy, are broad, general and comprehensive terms meaning 'originating from,' or 'having its origin in,' 'growing out of' or 'flowing from.'" *Id.* (quoting *Ins. Co. of N. Am. v. Royal Indem. Co.*, 429 F.2d 1014, 1017-18 (6th Cir. 1970)). The court determined that all that was required to come within the meaning of the words was a causal connection with the accident. *Id.*

11

Here, Williams filed police reports against Gorsick after each attempt she made to seek the back vacation pay that had been denied to her when she was terminated at Enormous Art. These reports concerned conduct allegedly committed by Gorsick while in the employ of Enormous Art. The discrepancy concerning the amount of back vacation pay due to Gorsick was a termination matter. Gorsick's need to seek the back vacation pay was casually connected to her termination; the pay was being withheld as a result of the termination. Thus, this Court finds that the malicious prosecution arose from Gorsick's termination. Therefore, the Endorsement applies to bar coverage for Gorsick's claims.[2]

## CONCLUSION

For the foregoing reasons, Secura's Motion for Summary Judgment is GRANTED.

An appropriate order shall issue.

---

[2] Having found Gorsick's claims barred by the Employment-Related Practices Exclusion, this Court finds it unnecessary to determine whether coverage is precluded by any failure to provide Secura with timely notice of the claims.